ELLIS, Judge:
Plaintiffs Gloria D. Garrett, Floyd D. Garrett, Jesse A. Garrett and Waver E. Garrett bring this suit for damages for the wrongful death of their father, Acy Williams Garrett. Defendants are Ed Gar-cille, Walter Hughes and Dixie Auto Insurance Company, their insurer. After trial on the merits, judgment was rendered dismissing plaintiffs’ suit, and they have appealed.
On August 23, 1971, Acy Garrett was involved in a vehicular accident with a truck owned by Mr. Garcille and operated by Walter Hughes. Mr. Garrett was admitted to St. Helena Parish Hospital that evening under the care of Dr. Robert D. Belser, with an admitting diagnosis of severe lum-bosacral strain, hyperextension injury of cervical spine, cervical concussion and mild multiple contusions.
From the morning of August 25 until his discharge on September 3, 1971, Mr. Garrett received three or four sitz baths daily, a daily whirlpool bath, and daily ultrasound treatment. He was made to walk, with assistance, for increasing periods each day, and spend a period of time sitting up each day. He gradually improved until he was discharged.
On the day of his discharge, he was taken home and died suddenly that evening of a massive pulmonary embolism. The sole question presented by this appeal is whether or not the accident caused Mr. Garrett’s death.
Three physicians testified: Dr. Belser; Dr. Paul D. Gard, who conducted a post mortem autopsy on Mr. Garrett, and Dr. William T. Barfield, an internist, who testified as an expert after reviewing Mr. Garrett’s hospital record and the autopsy protocol.
All three doctors testified that prolonged bed rest following a traumatic experience such as an automobile accident can result in the formation of blood clots, or thrombi, in the veins, generally of the legs. If these clots break loose in the bloodstream and travel through the venous system they are known as emboli. If the emboli become lodged in the pulmonary arteries, *915 which lead from the heart to the lungs, the condition is known as a pulmonary embolism. A massive pulmonary embolism completely obstructs the flow of blood from the heart to the lungs, and causes almost immediate death.
Dr. Barfield was of the opinion that under. the circumstances outlined above, it was reasonable to conclude that the accident, coupled with the immobility resulting from bed rest, was a cause of Mr. Garrett’s death.
Dr. Belser, the treating physician, testified that there was never any evidence of thrombophlebitis or phlebothrombosis in Mr. Garrett’s legs. He further testified that Mr. Garrett had high blood pressure, and that people with high blood pressure tend to form clots more readily than others. He testified that the accident, coupled with bed rest, could have caused the emboli which resulted in Mr. Garrett’s death.
He further testified, however, that pulmonary embolism can occur spontaneously in apparently healthy people, and that a clot can form in from five to ten minutes. He concluded that it was just as likely for the embolism in this case to have been spontaneous as for it to be related to the accident.
Dr. Gard’s testimony as to the origin of the embolism was substantially the same as that of Dr. Belser. He was of the opinion that the embolism in this case more likely formed in the pencil sized veins of the legs or arms. He found the thromboembolism which caused the death to be fresh, and said it could have formed minutes before death. He said he knew of no way to prove or disprove the relationship of the death of the accident, and could not say if the death resulted from either the trauma of the accident, the subsequent immobility, or both.
As we appreciate the expert testimony offered, both the treating physician and the pathologist who performed the autopsy were unable to say, with reasonable medical certainty, that there was a causal connection between the accident and Mr. Garrett’s death. Dr. Barfield, who never saw Mr. Garrett, but who had access to his records, was of the opinion that such a causal connection existed. The trial judge accepted the testimony of Drs. Belser and Gard, and held that plaintiffs had not proved a causal connection by a preponderance of the evidence. We are unable to say that, in so holding, he committed manifest error in reaching this factual conclusion.
The judgment appealed from is affirmed, at plaintiffs’ cost.
Affirmed.